IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FOSSIL TSEGAYE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:14-cv-978 |
| ) | JUDGE CAMPBELL |
| LOCAL 1235, AMALGAMATED ) | |
| TRANSIT UNION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Pending before the Court are the parties' cross motions for summary judgment of the only claim raised in Plaintiff's Complaint, a claim that Defendant (the "Union") breached its duty of fair representation. For the reasons set forth herein, the Court will deny Plaintiff's motion, Docket No. 20, and grant Defendant's motion, Docket No. 46.

**I.   Factual Background and Procedural History**

On June 29, 2013, Plaintiff was employed as a bus driver for the Metropolitan Nashville-Davidson County Transit Authority ("MTA"). A passenger riding on the MTA bus operated by Plaintiff on that date reported to MTA supervisors that Plaintiff was using a cell phone while driving the bus. At some point, a second passenger made a similar report. The MTA reviewed the video from the bus during the time in question and determined that Plaintiff was using a cell phone while driving the bus in violation of the MTA's zero tolerance policy. Plaintiff admitted he had his cell phone in his back pocket that day instead of in the compartment provided on the bus to hold the driver's cell phone, but he denied using the phone while driving. Docket No. 44-1 at 5 (18:11–16) (Plaintiff's Depo.). Plaintiff presented MTA with records from his cell phone service provider that contained no indication that the phone had been in use during that period of time. *Id.* at 5–6

(20:18–21:3).

The letter from MTA terminating Plaintiff's employment is dated July 29, 2013, and cites the following violations: using a cell phone while driving a bus, operating the bus without wearing a seatbelt, failing to pull into a pull-off to board passengers, opening the front door of the bus while the bus was in motion, and failing to make a complete stop at the railroad tracks. Docket No. 44-1 at 23–24 (MTA Termination Letter). The letter indicates that MTA decided to terminate Plaintiff's employment based on the passengers' statements and the video that showed Plaintiff repeatedly looking down at an object in his lap. The letter also states that if it were not terminating his employment for using a cell phone while driving the bus, "a separate and independent basis for discharge" would have been its conclusion that Plaintiff's contention that the brightness visible in his lap on the video was a reflection from the floor and not an electric device was without merit. *Id.* at 24. The letter further indicates that only the use of the cell phone while driving the bus and Plaintiff's alleged dishonesty were grounds for termination of employment. The other infractions would have led to discipline but not termination. *Id. at 23*.

The Plaintiff filed a grievance with his union, Local 1235, protesting his discharge. Local 1235 holds regular meetings on the second Monday of each month in the morning and evening. The Union's by-laws provide that ten members in good standing constitute a quorum to transact Union business. On the day Plaintiff's complaint about his termination was presented to the Union members, the members were given information about the incident and also were given the chance to watch the video recording MTA had used as grounds for the discharge. The Plaintiff came to both meetings and spoke on his own behalf. He told those in attendance that he had not used his cell phone while driving the bus and showed his cell phone provider's records. After watching the video

and hearing from Plaintiff, the Union members present voted on whether the Union should take the grievance related to Plaintiff's termination to arbitration. According to the official minutes of these meetings, the vote at the morning meeting was two individuals in favor of arbitration and five individuals opposed. The vote at the evening meeting was three individuals in favor and six opposed. Thus, the total vote between the two meetings was 11 to 5 in favor of not arbitrating Plaintiff's termination. Based on the membership vote, the Union did not move the grievance to arbitration. Over the years, the Union has voted not to arbitrate a member's termination dozens of times.

On December 18, 2013, Plaintiff filed this action in state court asserting that the Union violated its duty of fair representation. Docket No. 1-1. Defendant removed the action to this court on April 14, 2014.

## II. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'" *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party is able to meet this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton,* 572 U.S. ---- (2014), 134 S.Ct. 1861, 1866 (2014); *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (quoting *Anderson*, 477 U.S. at 252). "As to materiality, the substantive law will identify which facts are material. Only disputes over fact that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III. Legal Analysis

The Sixth Circuit has articulated the requirements for a plaintiff to prevail on a claim of a breach of the duty of fair representation as follows:

> In order to prove a breach of the duty of fair representation, an employee must demonstrate that the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190 (1967). Each of these wrongs is mutually independent, meaning, that "the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty." *Black* [*v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 584 (6th Cir. 1994)]. "Actions for a union's breach of its duty of fair representation depend for their rationale on the union's otherwise-complete control over the handling of an employee's grievance." *Id.* "Just as ... fiduciaries owe their beneficiaries a duty of care as well as duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 75 (1991) (citations omitted). There is no

4

requirement, however, that the grievance process be "error-free." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571 (1976).

With regard to the arbitrary prong, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill,* 499 U.S. at 67 (citation omitted). Mere negligence on the part of a union does not satisfy this requirement. *United Steelworkers of Am. v. Rawson,* 495 U.S. 362, 372–73, 376 (1990). Moreover, ordinary mistakes, errors, or flaws in judgment also will not suffice. *See Walk v. P\*I\*E\* Nationwide, Inc.,* 958 F.2d 1323, 1326 (6th Cir.1992) (citations omitted). That is, "an unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Id.* In essence then, to prevail, a plaintiff has the difficult task of showing that the union's actions were "wholly irrational." *O'Neill,* 499 U.S. at 78. The "wholly irrational" standard is described in terms of "extreme arbitrariness." *Black,* 15 F.3d at 585 ("[T]he relevant issue in assessing a Union's judgment is not whether it acted incorrectly, but whether it acted in bad faith, or extremely arbitrarily, or discriminatorily.") (internal quotation marks and citation omitted).

*Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538–39 (6th Cir. 2003).

Plaintiff's primary arguments are that his phone records demonstrate conclusively that he was not using his cell phone while driving the bus, that the Union did not give an explanation for its decision not to arbitrate his dismissal from his job, and that the Union did not follow its own by-laws because there was not a quorum at either the morning or evening meeting where his matter was put to a vote. None of these arguments support a finding that the Union's decision not to arbitrate his termination was arbitrary, discriminatory, or in bad faith. As to Plaintiff's claim that his cell phone records demonstrate that he was not using his cell phone while driving the bus, as the Union points out, there are many uses for a cell phone that would not create a record that would appear on the cell phone provider's records. Additionally, two passengers reported seeing Plaintiff using his phone while driving, and the Union's members viewed video footage that could be construed to support that conclusion. Nonetheless, this Court need not determine whether Plaintiff was using his cell phone while driving the bus. Even if Plaintiff could prove that his underlying grievance was

5

meritorious, that alone would not establish a breach of the duty of fair representation. *Vaca*, 386 U.S. at 192–95 (holding union fulfilled its duty of fair representation even though it declined to pursue an employee grievance later found by the Missouri Supreme Court to be supported by sufficient evidence to allow a jury verdict in favor of the employee to stand).

As to Plaintiff's argument that the Union failed to give an explanation for its decision not to arbitrate his dismissal, a vote by union members not to bring a grievance to arbitration does not, of itself, constitute a violation of the duty of fair representation. *See, e.g., Millner v. DTE Energy Co.*, 285 F. Supp. 2d 950, 962--63 (E.D. Mich. 2003) ("[I]t was clearly not arbitrary for Local 80 to vote against arbitration of a grievance that it believed was not winnable."). The Plaintiff cites *Fritz v. Prod. Plated Plastics, Inc.*, 676 F. Supp. 148 (W.D. Mich. 1987), for the proposition that in determining whether a union's decision not to arbitrate a member's grievance was arbitrary or in done in bad-faith, it is important to examine the reasons for the union's action. Docket No. 52 at 3 (Plaintiff's Response to Defendant's Motion for Summary Judgment). In *Fritz*, the members of the union voted not to arbitrate the employee's termination after hearing the union president present a neutral explanation of the facts surrounding the termination and listening to the employee speak on his own behalf. *Id.* at 150. The *Fritz* court found, based on the facts before it, that there was no evidence that the union was hostile or discriminatory toward the employee or that it had proceeded in bad faith, in a dishonest manner, or in an arbitrary or perfunctory manner. *Id.* at 150–51.

Although "[i]t is true that gross mistake or inaction which has no rational explanation may constitute a breach of the duty of fair representation," *Poole v. Budd Co.*, 706 F.2d 181, 184 (6th Cir. 1983) (citing cases) and that a union must have a "rational basis for making its decision not to press on with [an employee's] grievance," *id.*, none of the cases cited by Plaintiff support its contention

6

that the Union must give an explanation, after a vote by union members not to pursue an employee's grievance, of the precise reasons the members voted as they did. Furthermore, the Union members in this matter clearly had a rational basis for deciding not to arbitrate Plaintiff's termination. There were two passengers on the bus who had claimed they had seen him looking at his cell phone while driving the bus, and the MTA video seemed, at least to some individuals, to lend support to that conclusion. As with the facts in *Fritz*, the Union in this case presented the facts relevant to Plaintiff's termination in a neutral and fair manner and allowed Plaintiff the opportunity to address the members present at both meetings. There is no evidence in the record before this Court from which a reasonable trier of fact could conclude that the Union's decision not to arbitrate his termination was arbitrary, discriminatory, or in bad faith.

The Court also rejects Plaintiff's argument that the lack of a quorum and the allegedly low turnout at the meetings constitute a violation of the duty of fair representation. "The grievance process is not expected to be error free and the courts should hesitate to interfere with legitimate internal union decisions which fairly evaluate whether a claim warrants resort to the arbitral machinery." *Poole*, 706 F.2d at 184 (citing *Hines*, 424 U.S. at 571). This judicial hesitation is connected to the "well-established legal understanding that: '[o]nly those important or tactical decisions made by a union official at arbitration that exhibit arbitrary or discriminatory conduct, or actions taken in bad faith, constitute breach of a duty of fair representation.'" *Garrison*, 334 F.3d at 539 (quoting *Walk* 958 F.2d at 1326–27). The Union's decision to allow the Union members present to vote despite the absence of a quorum and the fact that the turnout for the meetings was, by Plaintiff's estimation, low, does not render the Union's decision arbitrary, discriminatory, or in bad faith.

The Court concludes that there is no genuine issue of material fact in dispute in this matter. The parties agree on the material facts. There is no evidence that would support a finding that the Union violated its duty of fair representation.

**IV.     Conclusion**

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion. Judgment will be entered for Defendant on the claim that it breached its duty of fair representation.

An appropriate order is filed herewith.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE